EXHIBIT 1

# EXHIBIT 1

EXHIBIT 1



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 22904318**
**Date Processed: 03/16/2021**

| | |
|---|---|
| **Primary Contact:** | Trish Partin<br>Acrisure, LLC<br>100 Ottawa Ave SW<br>Grand Rapids, MI 49503-5087 |
| **Electronic copy provided to:** | Tabatha Greer<br>Lisa Lawton<br>Jamie Fortney |

| | |
|---|---|
| **Entity:** | Acrisure Wallstreet Partners, LLC<br>Entity ID Number 3661555 |
| **Entity Served:** | Acrisure Wallstreet Partners, LLC d/b/a Wallstreet Group and/or Acrisure Wallstreet Group |
| **Title of Action:** | Ty Mayberry vs. Acrisure Wallstreet Partners, LLC d/b/a Wallstreet Group and/or Acrisure Wallstreet Group |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Labor / Employment |
| **Court/Agency:** | Kent County Circuit Court, MI |
| **Case/Reference No:** | 21 00837 CK |
| **Jurisdiction Served:** | Michigan |
| **Date Served on CSC:** | 03/12/2021 |
| **Answer or Appearance Due:** | 28 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Howard Law Group<br>Not Shown |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| **STATE OF MICHIGAN**<br>17TH | **JUDICIAL DISTRICT**<br>**JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | **SUMMONS** | **CASE NO.**<br>21  00837  --CK |
|---|---|---|---|

| Court address | Court telephone no. |
|---|---|
| 180 OTTAWA AVE. NW, GRAND RAPIDS, MI 49503 | (616) 632-5220 |

| Plaintiff's name(s), address(es), and telephone no(s).<br>TY MAYBERRY<br>In Pro Per<br>8451 Red Oak Rd.<br>Gerald, MO 63037<br><br>Plaintiff's attorney, bar no., address, and telephone no. | v | Defendant's name(s), address(es), and telephone no(s).<br>Acrisure Wallstreet Partners, LLC<br>d/b/a Wallstreet Group and/or Acrisure Wallstreet Group<br>c/o CSC-Lawyers Incorporating Service, registered agent<br>601 Abbot Road<br>Lansing, MI 48823<br><br>and<br><br>Acrisure, LLC<br>c/o CSC-Lawyers Incorporating Service, registered agent<br>601 Abbot Road<br>Lansing, MI 48823 |
|---|---|---|

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk. **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>JAN 2 7 2021 | Expiration date<br>APR 2 8 2021 | Court clerk<br>LISA POSTHUMUS LYONS |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (9/19) **SUMMONS**  MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| | SUMMONS |
|---|---|
| **PROOF OF SERVICE** | Case No. 21 --CK |

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____

_____
Signature

DocuSign Envelope ID: 8489C48F-DB18-4152-915D-DF0692855E17

STATE OF MICHIGAN

IN THE 17TH CIRCUIT COURT FOR THE COUNTY OF KENT

TY MAYBERRY,
an individual,

      Plaintiff,

vs.

ACRISURE WALLSTREET PARTNERS, LLC,
d/b/a WALLSTREET GROUP and/or
ACRISURE WALLSTREET GROUP
a Michigan limited liability company,
and ACRISURE, LLC,
a Michigan limited liability company,

      Defendants.

Case No. 20 00 83 7 1 CK

Hon.

---

Ty Mayberry
In Pro Per
8451 Red Oak Rd.
Gerald, MO 63037

---

## COMPLAINT AND JURY DEMAND

*There is no other pending or resolved civil action arising out of
the same transaction or occurrence alleged in the complaint.*

Plaintiff, Ty Mayberry, files this Complaint against Defendants, and alleges as follows:

1

DocuSign Envelope ID: 8489C48F-DB18-4152-915D-DF0692855E17

## THE PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff Ty Mayberry ("Mayberry") is an adult individual residing in the state of Missouri.

2.  Defendant Acrisure Wallstreet Partners, LLC ("Acrisure Wallstreet Partners") is a Michigan limited liability company with its principal business operations located at 1530 Rax Court, Jefferson City, MO 65109, and its registered agent at CSC-Lawyers Incorporating Service, 601 Abbot Road, East Lansing, MI 48823.

3.  As of April 11, 2018, Defendant Acrisure Wallstreet Partners registered an assumed name of Wallstreet Group with the State of Michigan.

4.  Acrisure Wallstreet Partners, LLC, does business as Wallstreet Group and/or Acrisure Wallstreet Group.

5.  Wallstreet Group's principal business operations are also located at 1530 Rax Court, Jefferson City, MO 65109.

6.  Defendant Acrisure, LLC ("Acrisure") is a Michigan limited liability company with its primary business operations located at 5664 Prairie Creek Drive SE Caledonia, Michigan, 49316, and its registered agent at CSC-Lawyers Incorporating Service, 601 Abbot Road, East Lansing, MI 48823.

7.  At all relevant times, Plaintiff was an employee of Defendant Acrisure Wallstreet Partners d/b/a Wallstreet Group and/or Acrisure Wallstreet Group, a subsidiary of Acrisure.

8.  Defendants were at all relevant times companies duly licensed to conduct business in the County of Kent, State of Michigan.

9.  The incident giving rise to this Complaint occurred on July 27, 2020, under a contract (or contracts) that included provisions that the laws of the State of Michigan govern.

10.     The amount in controversy exceeds Twenty-Five Thousand Dollars ($25,000.00) exclusive

        of costs, interest, and attorney fees, or is otherwise within the jurisdiction of this Court.

11.     This Court has jurisdiction pursuant to MCL 600.745(2) as the parties agreed in writing

        that an action based on a controversy under the agreement may be brought in this state.

12.     Venue is proper in Kent County pursuant to the forum selection clause included in certain

        contracts between the parties.

13.     Venue is also proper in Kent County pursuant to MCL 600.1621(a).

### STATEMENT OF FACTS

14.     Plaintiff realleges, reaffirms, and incorporates by reference all allegations contained in the

        previous paragraphs.

15.     Defendant Acrisure Wallstreet Partners entered into an employment agreement with

        Plaintiff on April 1, 2018. A copy of the contract is attached as Exhibit 1.

16.     On March 7, 2019, Plaintiff entered into a subsequent employment agreement with

        Acrisure Wallstreet Partners d/b/a Wallstreet Group and/or Acrisure Wallstreet Group. A

        copy of the contract is attached as Exhibit 2.

17.     The March 7, 2019, employment agreement was for a specified term period, stating the

        agreement was to commence on March 1, 2020, and remain in effect through March 1,

        2025.

18.     The March 7, 2019, employment agreement also stated that "all current agreements" for

        2019 between the parties shall stay in place until February 29, 2020.

19.     The "current agreements" included the April 1, 2018 employment agreement.

20.     The March 7, 2019, employment agreement does not indicate that the employer-employee relationship was at-will, or that the employer could terminate Ty Mayberry's employment unilaterally at any time.

21.     Rather, the terms of the March 7, 2019 agreement stated, the Contract could be terminated, "if and only if both parties Acrisure Wallstreet Group and Ty Mayberry both agree to terminate contract mutually."

22.     The terms of the March 7, 2019 agreement included:

   a.     a salary increase to $150,000.00 annually to be paid on the 15th of each month through Wallstreet Group payroll;

   b.     an override of 13 percentage points on Worksite carrier production; and,

   c.     15% of all Worksite Carrier Production bonuses.

23.     Following March 1, 2020, Acrisure Wallstreet Partners failed to pay Plaintiff pursuant to the agreed upon terms of the employment agreement.

24.     On July 27, 2020, Plaintiff received a letter from the Chief Operating Officer of Wallstreet Group indicating effective immediately, he was no longer an employee of Acrisure Wallstreet Partners, LLC or any Acrisure LLC affiliate.

25.     The termination was made in violation of the terms of the employment agreement and contract signed on March 7, 2019, which required both Acrisure Wallstreet Group and Ty Mayberry's mutual consent and agreement.

26.     There was no mutual agreement to terminate the contract signed on March 7, 2019.

27.     Specifically, Plaintiff did not agree to the termination.

28.     To date, Defendants have not paid Plaintiff the compensation owed under the employment agreement signed on March 7, 2019.

4

DocuSign Envelope ID: 8489C48F-DB18-4152-915D-DF0692855E17

29. No subsequent agreements were made between the parties that supersede the terms and conditions contained within the March 7, 2019, fully executed agreement.

## CLAIMS

### COUNT I
### BREACH OF CONTRACT

30. Plaintiff realleges, reaffirms, and incorporates by reference all allegations contained in the previous paragraphs.

31. Plaintiff and Defendant Acrisure·Wallstreet Partners d/b/a Wallstreet Group entered into an employment agreement on March 7, 2019.

32. Acrisure Wallstreet Group is a subsidiary of Acrisure.

33. The terms of the agreement stated the contract was to commence on March 1, 2020 and remain in effect through March 1, 2025.

34. The terms of the agreement stated, the Contract could be terminated, "if and only if both parties Acrisure Wallstreet Group and Ty Mayberry both agree to terminate contract mutually."

35. On July 27, 2020, Plaintiff received a letter from the Chief Operating Officer of Wallstreet Group indicating effective immediately, he was no longer an employee of Acrisure Wallstreet Partners, LLC or any Acrisure LLC affiliate.

36. The termination was made in violation of the terms of the employment agreement and contract signed on March 7, 2019, as Mayberry did not mutually agree to terminate the contract.

37. To date, Defendants have not paid Plaintiff the compensation owed under the employment agreement on March 7, 2019.

DocuSign Envelope ID: 8489C48F-DB18-4152-915D-DF0692855E17

## DAMAGES

38.   Plaintiff realleges, reaffirms, and incorporates by reference all allegations contained in the previous paragraphs.

39.   As a direct and/or proximate result of Defendants' breach of contract, Plaintiff Ty Mayberry has been deprived of:

   a.   Wages, both past and prospective;

   b.   Percentage points on all Worksite carrier production;

   c.   15% of all Worksite Carrier Production Bonuses;

   d.   Other Income;

   e.   General financial distress and anxiety; and,

   f.   Other employment benefits, including but not limited to:

      i.   prospective retirement benefits;

      ii.   holiday and vacation pay; and,

      iii.   other promotional and fringe benefits of said employment.

40.   Plaintiff Ty Mayberry also anticipates incurring attorney fees and costs as a result of Defendants' breach of contract.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court:

   I.   Enter judgment in favor of Plaintiff finding that Defendants' breached the employment agreement between Plaintiff and Defendants;

   II.   Order Defendants to pay all damages owed under the employment agreement including all salary, percentage points, bonuses, commissions, and other employee benefits;

   III.   Order Defendants to pay Plaintiff's costs of suit, including reasonable attorney fees; and,

IV.     Order any and all further relief, legal or equitable, as justice may require.

Respectfully submitted,

Dated: January 27, 2021

/s/  Ty Mayberry

DocuSigned by:

Ty Mayberry
In Pro Per

## **VERIFICATION**

I, Ty Mayberry, declare under penalty of perjury that the allegations contained in this

Verified Complaint are true to the best of my information, knowledge, and belief.

Dated: January 27, 2021

/s/  Ty Mayberry

DocuSigned by:

Ty Mayberry
In Pro Per

IV.    Order any and all further relief, legal or equitable, as justice may require.

Respectfully submitted,

Dated: January 27, 2021

/s/ _Ty Mayberry (with permission)_
Ty Mayberry
In Pro Per

## **VERIFICATION**

    I, Ty Mayberry, declare under penalty of perjury that the allegations contained in this

Verified Complaint are true to the best of my information, knowledge, and belief.

Dated: January 27, 2021

/s/ _Ty Mayberry (with permission)_
Ty Mayberry
In Pro Per

7

DocuSign Envelope ID: 8489C48F-DB18-4152-915D-DF0692855E17

## JURY DEMAND

Plaintiff, Ty Mayberry, demands a jury on all claims set forth above.

Respectfully submitted,

Dated: January 27, 2021

/s/ Ty Mayberry
Ty Mayberry

8

## **JURY DEMAND**

Plaintiff, Ty Mayberry, demands a jury on all claims set forth above.

Respectfully submitted,

Dated:  January 27, 2021

/s/ *Ty Mayberry (with permission)*
Ty Mayberry

8

# EXHIBIT 1

## EMPLOYMENT AGREEMENT (PRODUCER)

This Employment Agreement (the "Agreement") is made effective as of _April 1st_, 20_18_ (the "Effective Date"), by and between **ACRISURE WALLSTREET PARTNERS, LLC**, a Michigan limited liability company (the "Company"), and _Ty D. Mayberry_ ("Employee").

In consideration of the promises contained in this Agreement, and Employee's employment or continued employment with the Company, as the case may be, and other valid and adequate consideration, the parties agree as follows:

1. **Employment.** The Company shall employ Employee, and Employee shall work for the Company, subject to the terms and conditions of this Agreement and the Company's Employee Handbook, as may be amended from time to time. All business Employee develops and secures during the term of this Agreement and all business Employee services during the term of this Agreement shall be the exclusive property of the Company. Notwithstanding the foregoing, Employee may be permitted to receive certain commission payments directly from third party insurance companies or carriers as approved by the Company from time-to-time (which such permission shall be subject to change upon notice to the Employee). In the event of a conflict between the terms of the Agreement and the Employee Handbook, the terms of this Agreement shall control.

2. **Definition of Business.** For purposes of this Agreement, the term "business" shall include all aspects of the Company's insurance business and/or human resources services business, and any other business in which the Company is currently or may become involved.

3. **Exclusive Agreement.** Employee shall devote his/her full time and effort to securing business for the Company's benefit while in the Company's employ. Among other Agreement obligations imposed, Employee shall not place any business, directly or indirectly, with any person or entity other than the Company without the Company's prior written consent, nor be involved financially or otherwise with any active insurance agency or other business of a type conducted by the Company, or similar enterprise. For clarity, Employee shall be permitted to provide services for Wallstreet Financial Group, Inc., a Missouri corporation, as may be directed by the Company from time-to-time.

4. **General Duties.** Employee shall solicit all business types the Company offers and shall render such services to customers as the Company deems reasonably necessary and as the Company may request and coordinate. Employee shall perform such other duties as the Company assigns to Employee.

5. **Salary, Commissions and Expenses.** Employee's compensation may be on a salary basis, commission basis, or a combination of both – as the Company determines and/or changes from time to time in its discretion. Any available commissions will be based on a separate commission schedule for Employee's job responsibilities as the Company determines and/or changes from time to time in its discretion during the course of Employee's employment. Employee shall not earn any commission until the Company receives payment of such commission from the insurance or product vendor. Once earned, the commission shall be payable to Employee at the next scheduled commission payment date if the Company received

(ACRWALLSTREET/P/2NSCE/ND)

payment of the gross commission from the insurance or product vendor at least fifteen (15) business days before the scheduled commission payment date. If not, the commission will be payable on the next scheduled commission payment date. Upon and following employment termination for whatever reason, Employee will have earned only those commissions for business Employee obtained during the course of employment and for which the Company received payment on or before the last date of the term of this Agreement. Upon prior written approval from the Company, the Company shall reimburse Employee for all reasonable Employee business expenses incurred in the solicitation of business for the Company, provided Employee timely submits receipts to the Company in satisfactory form and in accordance with the Company's expense reimbursement policy.

6.    Benefits. Employee will be eligible to participate in such benefit programs as the Company may make available from time to time to comparable employees as determined by the Company in its discretion.

7.    At-Will Employment. The term of this Agreement shall commence on the Effective Date and shall end as of the date of termination by either the Company or Employee. Employee's employment under this Agreement shall be on an at-will basis, terminable by either party at any time. Employee's eligibility for compensation and benefits will cease on the date of employment termination, except as may be otherwise provided in applicable benefit plan documents.

8.    Nondisclosure of Confidential Information. Employee will have access to confidential information about the Company (the "Confidential Information"), including without limitation, information about the Company's operations, processes, procedures, trade secrets, agent lists, adjuster lists, rating techniques, rates, coverage, accounting rules, employee information, insurance companies, computer techniques, marketing techniques, advertising techniques, know-how, finances, business plans, costs, pricing, sales, customer lists, the needs and demands of customers, and vendor lists, including lists and contacts with insurance companies. In addition, Employee will develop other information that the Company considers to be Confidential Information. Employee will not, directly or indirectly, disclose, furnish, or make available, except in the course of performing Employee's duties of employment under this Agreement, any Confidential Information (regardless of how Employee learned of it or who developed it), without the Company's prior written approval. These restrictions concerning Confidential Information shall remain in effect following termination of this Agreement or termination of Employee's employment with the Company, without limitation.

9.    Duty of Employee upon Termination. Employee shall, immediately upon termination of employment for any reason, return to the Company all client records of any sort and all Company literature, supplies, letters, written or printed forms, diaries, phone lists, documents containing customer lists, customer information, product information, pricing information, information as to sources of services, financial information of the Company and memoranda pertaining to the Company's business. Employee shall also, immediately upon termination of employment, return to the Company all Company property in Employee's possession, including automobiles, telephones, and any other Company-issued equipment.

2

(ACRWALLSTREET/P/2NSCE/ND)

10.    Restrictive Covenants. The Company and Employee agree that the Company will provide Employee with the opportunity to receive compensation pursuant to this Agreement and the same constitutes valuable consideration. Employee further acknowledges that Employee will be provided with access to customer and other confidential information concerning the Company's business, as well of that of the Company's affiliated entities without limitation ("Affiliated Entities" or individuals "Affiliated Entity"). It is further agreed that it requires special and unique knowledge and information to act as a business agent on behalf of the Company and that the Employee shall gain such special and unique knowledge and information from the Company and/or Affiliated Entities throughout the time of his/her employment. This knowledge and information are integral parts of the business of the Company and/or of the Affiliated Entities, and the use of this knowledge and information by a competitor of the Company would cause irreparable harm to the Company. The Company and Employee agree that this knowledge and information constitute legitimate protectable business interests of the Company and/or of the Affiliated Entities. The Company and Employee further agree that the business Employee secures, develops or services for the Company or for an Affiliated Entity shall constitute the exclusive property of the Company or Affiliated Entity as applicable. In view of the foregoing, Employee agrees that, for the duration of Employee's employment, and in the event Employee's employment is terminated for any reason, for a period of two (2) years after the termination of employment:

a.    Non-Solicitation/Non-Interference. Employee will not directly or indirectly, for himself/herself or for any other person, corporation, firm or entity, either as a principal, shareholder, member, agent, manager, employee, contractor, owner, partner, director, officer or in any other capacity, engage in any of the following activities, without regard to geographic location:

i.    Contacting or engaging in any communication with any Company or Affiliated Entity customer for whom Employee had responsibility, or contacting or engaging in any communications with any Company or Affiliated Entity customer or prospective Company or Affiliated Entity customer about whom Employee obtained knowledge during employment with the Company, to secure business competitive to the products and services provided by the Company or Affiliated Entity;

ii.    Requesting, advising, or encouraging any customer of the Company or of an Affiliated Entity to terminate or curtail its relationship with the Company or Affiliated Entity, or requesting or advising any person to refrain from becoming a customer or supplier of the Company or an Affiliated Entity;

iii.    Requesting, advising, or encouraging any employee, agent, representative or independent contractor of the Company or an Affiliated Entity to terminate his, her, or its relationship with the Company or Affiliated Entity, or requesting or advising any person

3

(ACRWALLSTREET/P/2NSCE/ND)

to refrain from becoming an employee, agent, representative or independent contractor of the Company or of an Affiliated Entity, or otherwise pursuing, employing or retaining (as an employee, an independent contractor or otherwise) any employee, agent, representative or independent contractor of the Company or of an Affiliated Entity without the written permission of the Company.

11.     Reasonableness of Restrictions, Injunctive Relief and Tolling. Employee acknowledges that the restrictions contained in Paragraph 10 are reasonable and necessary for the reasonable protection of the Company's business and interests, and that any violation of these restrictions will cause substantial and irreparable injury to the Company, and as a consequence thereof, Employee agrees that the Company is entitled, in addition to any other remedies, to preliminary and permanent injunctive relief to secure specific performance and to prevent a breach or contemplated breach of this Agreement.  If it is judicially determined that Employee has violated any obligations of Paragraph 10, the period applicable to each obligation Employee has been determined to have violated will be extended by a period of time equal in length to the period during which such violation(s) occurred.  The Company reserves all remedies available at law or in equity.

12.     Severability. In the event any provisions of this Agreement shall be held to be invalid or unenforceable, the same shall not affect the validity or enforceability of any other provisions thereof, and in the event that such claim of invalidity or unenforceability of any provision shall be predicated upon the length of the term of any covenant therein or the area covered thereby or the type of activity restrained, such provision shall not be deemed invalid or unenforceable but shall be deemed modified to the maximum area and the maximum term of duration and the type of activity as any court of competent jurisdiction shall deem reasonable, valid and enforceable.

13.     Purchase of Business. The Company and Employee agree that there are many different ways to violate Paragraph 10 due to the variety of covenants contained in this Agreement, each of which could cause irreparable harm to the Company or the Affiliated Entities.  The parties specifically agree that any contact Employee makes to the Company's or the Affiliated Entity's customers will cause injury to the Company even if the contact does not immediately or directly result in Employee writing business for a Company or Affiliated Entity customer.  The parties therefore agree that there is no adequate remedy at law if Employee violates Paragraph 10.  However, in the event that Employee actually writes business for any Company of Affiliated Entity customer after Employee leaves the Company in violation of the covenants in Paragraph 10, whether or not the Company has obtained or has attempted to obtain equitable relief, the Company, at its election, may deem that Employee has elected to purchase from the Company or Affiliated Entity the business with respect to such customer, and upon written demand, Employee shall pay to the Company or Affiliated Entity an amount equal to two (2) times the customer's first year's sales commission payable with respect to any business customer purchases in connection with the business services Employee renders.  The parties intend this provision to be a reasonable estimation of damages which the Company or an Affiliated Entity may invoke only if Employee actually writes business for a Company Affiliated Entity customer.  All remedies contained in this Agreement are cumulative and may be exercised

4

(ACRWALLSTREET/P/2NSCE/ND)

singularly or concurrently, and the exercise of any one shall not be deemed a waiver of any other.

14.     Breach by Employee; Remedies.  Employee shall conduct him/herself at all times according to the terms and conditions of this Agreement and the Employee Handbook.  Failure to do so may render Employee liable for any loss or damage the Company may suffer on account of such failure.   Employee agrees that the Company may specifically enforce Employee's performance or recover damages for a breach of this Agreement by civil suit, injunction or otherwise, and Employee shall be liable to the Company for the reasonable costs and attorneys' fees of any such action in which a breach is established.  The parties agree that any action at law or equity or any judicial proceedings for enforcement of this Agreement or any provision thereof shall be instituted only in the federal or state courts located in the County of Kent, State of Michigan.

15.     Acknowledgment.  Employee acknowledges that execution of this Agreement is required by the Company as a condition of becoming or remaining an employee, as the case may be, and that this Agreement supersedes any and all prior employment agreements between Employee and the Company (including any agreement between Employee and the Company's predecessor company), whether verbal or written, expressed or implied.

16.     Benefit.  This Agreement shall be binding upon and operate for the benefit of the parties and their respective heirs, representatives, successors, and assigns.

17.     Amendment and Termination.   The parties may amend or terminate this Agreement in a writing signed by both parties.  This Agreement will automatically terminate upon the Company's dissolution, bankruptcy, or insolvency, or Employee's death.

18.     State Law.  The laws of the State of Michigan shall govern this Agreement, excluding choice of law principles.

19.     Survival.  The parties' obligations under Paragraphs 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 20 shall survive the termination of Employee's employment and/or this Agreement.

20.     Entire Agreement.  This Agreement represents the entire Agreement between the parties regarding the terms and conditions of Employee's employment.  The terms of this Agreement may not be varied, modified, supplemented or in any other way changed by extraneous verbal or written representations by the Company or its agents.  This Agreement may not be modified except by a written agreement signed by all parties that expressly references and purports to modify this Agreement.

*[Signatures appear on the following page]*

5

(ACRWALLSTREET/P/2NSCE/ND)

IN WITNESS WHEREOF, the parties have executed this Agreement effective on the Effective Date identified above.

**EMPLOYEE:**

_(Signature)_

_Printed name_

**THE COMPANY:**

**ACRISURE       WALLSTREET
PARTNERS, LLC**

By: _____

Its: _____

8603821_2.doc

(ACRWALLSTREET/P/2NSCE/ND)

# EXHIBIT 2



Leroy Wilbers  -  Managing Principle Acrisure Wallstreet Group

Ty Mayberry — Director of Worksite Benefits

Wallstreet Group / Acrisure

March 7, 2019

### Employment Agreement

     This agreement is between the party of Leroy Wilber - Managing Principal of Acrisure Wallstreet Group and the party of Ty Mayberry -- Worksite Benefits Director of Acrisure Wallstreet Group which acknowledges that both parties agree to the listed terms of employment following the 3 year earn out period ending March 1, 2020.  All current employment agreements for 2019 between these parties shall stay in place until February 29, 2020.

     Due to the extensive work and growth of the Worksite Division over the previous two years as well as the commitment from Mr. Mayberry to run all new override commissions that he is currently receiving directly to Acrisure Wallstreet Group;   Effective March 1,2020 Ty Mayberry will receive for his role as Director of Worksite a W2 Salary in the amount of $150,000 annually to be paid on the 15th of each month through Acrisure Wallstreet Group payroll as well as an override of 13 percentage points on all Worksite carrier production including but not limited to Aflac, Sun Life, Voya, Colonial, and Trans America.  In addition, Ty Mayberry will also receive 15% of all Worksite Carrier Production bonuses awarded to Acrisure Wallstreet Group including but not limited to Aflac, Sun Life, Voya, Colonial, and Trans America.

     Both signing parties Leroy Wilbers, managing principle representative of Acrisure Wallstreet Group and Ty Mayberry Worksite Benefits Director of Acrisure Wallstreet Group agree to the terms in this Employment Agreement.  This agreement is a contract of employment between Acrisure Wallstreet Group and Ty Mayberry effective March 1, 2020 and has been agreed upon to stay in force through March 1, 2025.  Contract may be terminated if and only if both parties Acrisure Wallstreet Group and Ty Mayberry both agree to terminate contract mutually.

Leroy Wilbers

Managing Principle

Acrisure Wallstreet Group

Ty Mayberry

Director of Worksite Benefits

Acrisure Wallstreet Group

HOWARD LAW GROUP
25 IONIA AVE. SW
SUITE 230
GRAND RAPIDS, MI 49503

FIRST-CLASS

02 7H
000:307768    MAR 09 2021
MAILED FROM ZIP CODE 49503

Acrisure Wallstreet Partners, LLC
d/b/a Wallstreet Group and/or Acrisure Wallstreet Group
c/o Resident Agent CSC-Lawyers Incorporating Service
601 Abbot Road
Lansing, MI 48823



CERTIFIED MAIL



**null / ALL**
**Transmittal Number: 22904492**
**Date Processed: 03/16/2021**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Trish Partin<br>Acrisure, LLC<br>100 Ottawa Ave SW<br>Grand Rapids, MI 49503-5087 |
| **Electronic copy provided to:** | Tabatha Greer<br>Lisa Lawton<br>Jamie Fortney |

| | |
|---|---|
| **Entity:** | Acrisure Wallstreet Partners, LLC<br>Entity ID Number  3661555 |
| **Entity Served:** | Acrisure Wallstreet Partners, LLC d/b/a Wallstreet Group and/or Acrisure<br>Wallstreet Group |
| **Title of Action:** | Ty Mayberry vs. Acrisure Wallstreet Partners, LLC d/b/a Wallstreet Group and/or<br>Acrisure Wallstreet Group |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Labor / Employment |
| **Court/Agency:** | Kent County Circuit Court, MI |
| **Case/Reference No:** | 21-00837-CK |
| **Jurisdiction Served:** | Michigan |
| **Date Served on CSC:** | 03/12/2021 |
| **Answer or Appearance Due:** | 21 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Ty Mayberry<br>Not Shown |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| **STATE OF MICHIGAN**<br>17TH    **JUDICIAL DISTRICT**<br>**JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | **SUMMONS** | **CASE NO.**<br>21 **0 0 8 3 7** --CK |
|---|---|---|

| Court address<br>180 OTTAWA AVE. NW, GRAND RAPIDS, MI 49503 | Court telephone no.<br>(616) 632-5220 |
|---|---|

| Plaintiff's name(s), address(es), and telephone no(s).<br>TY MAYBERRY<br>In Pro Per<br>8451 Red Oak Rd.<br>Gerald, MO 63037 | v | Defendant's name(s), address(es), and telephone no(s).<br>Acrisure Wallstreet Partners, LLC<br>d/b/a Wallstreet Group and/or Acrisure Wallstreet Group<br>c/o CSC-Lawyers Incorporating Service, registered agent<br>601 Abbot Road<br>Lansing, MI 48823<br><br>and<br><br>Acrisure, LLC<br>c/o CSC-Lawyers Incorporating Service, registered agent<br>601 Abbot Road<br>Lansing, MI 48823 |
|---|---|---|

| Plaintiff's attorney, bar no., address, and telephone no. |
|---|

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.      **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>JAN 2 7 2021 | Expiration date*<br>APR 2 8 2021 | Court clerk<br>LISA POSTHUMUS LYONS |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)   **SUMMONS**             MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

DocuSign Envelope ID: 8489C48F-DB18-4152-915D-DF0692855E17

STATE OF MICHIGAN

IN THE 17TH CIRCUIT COURT FOR THE COUNTY OF KENT

TY MAYBERRY,                                     Case No. 21-**0 0 8 3 7**-CK
an individual,

                                                 Hon.
        Plaintiff,

vs.

ACRISURE WALLSTREET PARTNERS, LLC,
d/b/a WALLSTREET GROUP and/or
ACRISURE WALLSTREET GROUP
a Michigan limited liability company,
and ACRISURE, LLC,
a Michigan limited liability company,

        Defendants.

_____

Ty Mayberry
In Pro Per
8451 Red Oak Rd.
Gerald, MO 63037

_____

## COMPLAINT AND JURY DEMAND

*There is no other pending or resolved civil action arising out of
the same transaction or occurrence alleged in the complaint.*

Plaintiff, Ty Mayberry, files this Complaint against Defendants, and alleges as follows:

1

DocuSign Envelope ID: 8489C48F-DB18-4152-915D-DF0692855E17

## THE PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff Ty Mayberry ("Mayberry") is an adult individual residing in the state of Missouri.

2.  Defendant Acrisure Wallstreet Partners, LLC ("Acrisure Wallstreet Partners") is a Michigan limited liability company with its principal business operations located at 1530 Rax Court, Jefferson City, MO 65109, and its registered agent at CSC-Lawyers Incorporating Service, 601 Abbot Road, East Lansing, MI 48823.

3.  As of April 11, 2018, Defendant Acrisure Wallstreet Partners registered an assumed name of Wallstreet Group with the State of Michigan.

4.  Acrisure Wallstreet Partners, LLC, does business as Wallstreet Group and/or Acrisure Wallstreet Group.

5.  Wallstreet Group's principal business operations are also located at 1530 Rax Court, Jefferson City, MO 65109.

6.  Defendant Acrisure, LLC ("Acrisure") is a Michigan limited liability company with its primary business operations located at 5664 Prairie Creek Drive SE Caledonia, Michigan, 49316, and its registered agent at CSC-Lawyers Incorporating Service, 601 Abbot Road, East Lansing, MI 48823.

7.  At all relevant times, Plaintiff was an employee of Defendant Acrisure Wallstreet Partners d/b/a Wallstreet Group and/or Acrisure Wallstreet Group, a subsidiary of Acrisure.

8.  Defendants were at all relevant times companies duly licensed to conduct business in the County of Kent, State of Michigan.

9.  The incident giving rise to this Complaint occurred on July 27, 2020, under a contract (or contracts) that included provisions that the laws of the State of Michigan govern.

DocuSign Envelope ID: 8489C48F-DB18-4152-915D-DF0692855E17

10. The amount in controversy exceeds Twenty-Five Thousand Dollars ($25,000.00) exclusive of costs, interest, and attorney fees, or is otherwise within the jurisdiction of this Court.

11. This Court has jurisdiction pursuant to MCL 600.745(2) as the parties agreed in writing that an action based on a controversy under the agreement may be brought in this state.

12. Venue is proper in Kent County pursuant to the forum selection clause included in certain contracts between the parties.

13. Venue is also proper in Kent County pursuant to MCL 600.1621(a).

## STATEMENT OF FACTS

14. Plaintiff realleges, reaffirms, and incorporates by reference all allegations contained in the previous paragraphs.

15. Defendant Acrisure Wallstreet Partners entered into an employment agreement with Plaintiff on April 1, 2018. A copy of the contract is attached as Exhibit 1.

16. On March 7, 2019, Plaintiff entered into a subsequent employment agreement with Acrisure Wallstreet Partners d/b/a Wallstreet Group and/or Acrisure Wallstreet Group. A copy of the contract is attached as Exhibit 2.

17. The March 7, 2019, employment agreement was for a specified term period, stating the agreement was to commence on March 1, 2020, and remain in effect through March 1, 2025.

18. The March 7, 2019, employment agreement also stated that "all current agreements" for 2019 between the parties shall stay in place until February 29, 2020.

19. The "current agreements" included the April 1, 2018 employment agreement.

DocuSign Envelope ID: 8489C48F-DB18-4152-915D-DF0692855E17

20. The March 7, 2019, employment agreement does not indicate that the employer-employee relationship was at-will, or that the employer could terminate Ty Mayberry's employment unilaterally at any time.

21. Rather, the terms of the March 7, 2019 agreement stated, the Contract could be terminated, "if and only if both parties Acrisure Wallstreet Group and Ty Mayberry both agree to terminate contract mutually."

22. The terms of the March 7, 2019 agreement included:

    a.     a salary increase to $150,000.00 annually to be paid on the 15th of each month through Wallstreet Group payroll;

    b.     an override of 13 percentage points on Worksite carrier production; and,

    c.     15% of all Worksite Carrier Production bonuses.

23. Following March 1, 2020, Acrisure Wallstreet Partners failed to pay Plaintiff pursuant to the agreed upon terms of the employment agreement.

24. On July 27, 2020, Plaintiff received a letter from the Chief Operating Officer of Wallstreet Group indicating effective immediately, he was no longer an employee of Acrisure Wallstreet Partners, LLC or any Acrisure LLC affiliate.

25. The termination was made in violation of the terms of the employment agreement and contract signed on March 7, 2019, which required both Acrisure Wallstreet Group and Ty Mayberry's mutual consent and agreement.

26. There was no mutual agreement to terminate the contract signed on March 7, 2019.

27. Specifically, Plaintiff did not agree to the termination.

28. To date, Defendants have not paid Plaintiff the compensation owed under the employment agreement signed on March 7, 2019.

DocuSign Envelope ID: 8489C48F-DB18-4152-915D-DF0692855E17

29.    No subsequent agreements were made between the parties that supersede the terms and conditions contained within the March 7, 2019, fully executed agreement.

## CLAIMS

### COUNT I
### BREACH OF CONTRACT

30.    Plaintiff realleges, reaffirms, and incorporates by reference all allegations contained in the previous paragraphs.

31.    Plaintiff and Defendant Acrisure Wallstreet Partners d/b/a Wallstreet Group entered into an employment agreement on March 7, 2019.

32.    Acrisure Wallstreet Group is a subsidiary of Acrisure.

33.    The terms of the agreement stated the contract was to commence on March 1, 2020 and remain in effect through March 1, 2025.

34.    The terms of the agreement stated, the Contract could be terminated, "if and only if both parties Acrisure Wallstreet Group and Ty Mayberry both agree to terminate contract mutually."

35.    On July 27, 2020, Plaintiff received a letter from the Chief Operating Officer of Wallstreet Group indicating effective immediately, he was no longer an employee of Acrisure Wallstreet Partners, LLC or any Acrisure LLC affiliate.

36.    The termination was made in violation of the terms of the employment agreement and contract signed on March 7, 2019, as Mayberry did not mutually agree to terminate the contract.

37.    To date, Defendants have not paid Plaintiff the compensation owed under the employment agreement on March 7, 2019.

DocuSign Envelope ID: 8489C48F-DB18-4152-915D-DF0692855E17

## DAMAGES

38.  Plaintiff realleges, reaffirms, and incorporates by reference all allegations contained in the previous paragraphs.

39.  As a direct and/or proximate result of Defendants' breach of contract, Plaintiff Ty Mayberry has been deprived of:

  a.  Wages, both past and prospective;

  b.  Percentage points on all Worksite carrier production;

  c.  15% of all Worksite Carrier Production Bonuses;

  d.  Other Income;

  e.  General financial distress and anxiety; and,

  f.  Other employment benefits, including but not limited to:

    i.  prospective retirement benefits;

    ii.  holiday and vacation pay; and,

    iii.  other promotional and fringe benefits of said employment.

40.  Plaintiff Ty Mayberry also anticipates incurring attorney fees and costs as a result of Defendants' breach of contract.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court:

  I.  Enter judgment in favor of Plaintiff finding that Defendants' breached the employment agreement between Plaintiff and Defendants;

  II.  Order Defendants to pay all damages owed under the employment agreement including all salary, percentage points, bonuses, commissions, and other employee benefits;

  III.  Order Defendants to pay Plaintiff's costs of suit, including reasonable attorney fees; and,

DocuSign Envelope ID: 8489C48F-DB18-4152-915D-DF0692855E17

IV.    Order any and all further relief, legal or equitable, as justice may require.

Respectfully submitted,

Dated: January 27, 2021

/s/ _____
Ty Mayberry
In Pro Per

## **VERIFICATION**

I, Ty Mayberry, declare under penalty of perjury that the allegations contained in this Verified Complaint are true to the best of my information, knowledge, and belief.

Dated: January 27, 2021

/s/ _____
Ty Mayberry
In Pro Per

7

IV.    Order any and all further relief, legal or equitable, as justice may require.

Respectfully submitted,

Dated: January 27, 2021

/s/ _Ty Mayberry_ (with permission)
Ty Mayberry
In Pro Per

## **VERIFICATION**

I, Ty Mayberry, declare under penalty of perjury that the allegations contained in this Verified Complaint are true to the best of my information, knowledge, and belief.

Dated: January 27, 2021

/s/ _Ty Mayberry_ (with permission)
Ty Mayberry
In Pro Per

DocuSign Envelope ID: 8489C48F-DB18-4152-915D-DF0692855E17

## JURY DEMAND

Plaintiff, Ty Mayberry, demands a jury on all claims set forth above.

Respectfully submitted,

Dated: January 27, 2021

/s/ _Ty Mayberry_
Ty Mayberry

8

**JURY DEMAND**

Plaintiff, Ty Mayberry, demands a jury on all claims set forth above.

Respectfully submitted,

Dated:  January 27, 2021

/s/ _Ty Mayberry_ (with permission)
Ty Mayberry

# EXHIBIT 1

## EMPLOYMENT AGREEMENT (PRODUCER)

This Employment Agreement (the "Agreement") is made effective as of _April 1st_, 20_18_ (the "Effective Date"), by and between **ACRISURE WALLSTREET PARTNERS, LLC**, a Michigan limited liability company (the "Company"), and _Ty D. Mayberry_ ("Employee").

In consideration of the promises contained in this Agreement, and Employee's employment or continued employment with the Company, as the case may be, and other valid and adequate consideration, the parties agree as follows:

1.    Employment. The Company shall employ Employee, and Employee shall work for the Company, subject to the terms and conditions of this Agreement and the Company's Employee Handbook, as may be amended from time to time. All business Employee develops and secures during the term of this Agreement and all business Employee services during the term of this Agreement shall be the exclusive property of the Company. Notwithstanding the foregoing, Employee may be permitted to receive certain commission payments directly from third party insurance companies or carriers as approved by the Company from time-to-time (which such permission shall be subject to change upon notice to the Employee). In the event of a conflict between the terms of the Agreement and the Employee Handbook, the terms of this Agreement shall control.

2.    Definition of Business. For purposes of this Agreement, the term "business" shall include all aspects of the Company's insurance business and/or human resources services business, and any other business in which the Company is currently or may become involved.

3.    Exclusive Agreement. Employee shall devote his/her full time and effort to securing business for the Company's benefit while in the Company's employ. Among other Agreement obligations imposed, Employee shall not place any business, directly or indirectly, with any person or entity other than the Company without the Company's prior written consent, nor be involved financially or otherwise with any active insurance agency or other business of a type conducted by the Company, or similar enterprise. For clarity, Employee shall be permitted to provide services for Wallstreet Financial Group, Inc., a Missouri corporation, as may be directed by the Company from time-to-time.

4.    General Duties. Employee shall solicit all business types the Company offers and shall render such services to customers as the Company deems reasonably necessary and as the Company may request and coordinate. Employee shall perform such other duties as the Company assigns to Employee.

5.    Salary, Commissions and Expenses. Employee's compensation may be on a salary basis, commission basis, or a combination of both – as the Company determines and/or changes from time to time in its discretion. Any available commissions will be based on a separate commission schedule for Employee's job responsibilities as the Company determines and/or changes from time to time in its discretion during the course of Employee's employment. Employee shall not earn any commission until the Company receives payment of such commission from the insurance or product vendor. Once earned, the commission shall be payable to Employee at the next scheduled commission payment date if the Company received

(ACRWALLSTREET/P/2NSCE/ND)

payment of the gross commission from the insurance or product vendor at least fifteen (15) business days before the scheduled commission payment date. If not, the commission will be payable on the next scheduled commission payment date. Upon and following employment termination for whatever reason, Employee will have earned only those commissions for business Employee obtained during the course of employment and for which the Company received payment on or before the last date of the term of this Agreement. Upon prior written approval from the Company, the Company shall reimburse Employee for all reasonable Employee business expenses incurred in the solicitation of business for the Company, provided Employee timely submits receipts to the Company in satisfactory form and in accordance with the Company's expense reimbursement policy.

6. _Benefits._ Employee will be eligible to participate in such benefit programs as the Company may make available from time to time to comparable employees as determined by the Company in its discretion.

7. _At-Will Employment._ The term of this Agreement shall commence on the Effective Date and shall end as of the date of termination by either the Company or Employee. Employee's employment under this Agreement shall be on an at-will basis, terminable by either party at any time. Employee's eligibility for compensation and benefits will cease on the date of employment termination, except as may be otherwise provided in applicable benefit plan documents.

8. _Nondisclosure of Confidential Information._ Employee will have access to confidential information about the Company (the "Confidential Information"), including without limitation, information about the Company's operations, processes, procedures, trade secrets, agent lists, adjuster lists, rating techniques, rates, coverage, accounting rules, employee information, insurance companies, computer techniques, marketing techniques, advertising techniques, know-how, finances, business plans, costs, pricing, sales, customer lists, the needs and demands of customers, and vendor lists, including lists and contacts with insurance companies. In addition, Employee will develop other information that the Company considers to be Confidential Information. Employee will not, directly or indirectly, disclose, furnish, or make available, except in the course of performing Employee's duties of employment under this Agreement, any Confidential Information (regardless of how Employee learned of it or who developed it), without the Company's prior written approval. These restrictions concerning Confidential Information shall remain in effect following termination of this Agreement or termination of Employee's employment with the Company, without limitation.

9. _Duty of Employee upon Termination._ Employee shall, immediately upon termination of employment for any reason, return to the Company all client records of any sort and all Company literature, supplies, letters, written or printed forms, diaries, phone lists, documents containing customer lists, customer information, product information, pricing information, information as to sources of services, financial information of the Company and memoranda pertaining to the Company's business. Employee shall also, immediately upon termination of employment, return to the Company all Company property in Employee's possession, including automobiles, telephones, and any other Company-issued equipment.

2

(ACRWALLSTREET/P/2NSCE/ND)

10. <u>Restrictive Covenants</u>. The Company and Employee agree that the Company will provide Employee with the opportunity to receive compensation pursuant to this Agreement and the same constitutes valuable consideration. Employee further acknowledges that Employee will be provided with access to customer and other confidential information concerning the Company's business, as well of that of the Company's affiliated entities without limitation ("Affiliated Entities" or individuals "Affiliated Entity"). It is further agreed that it requires special and unique knowledge and information to act as a business agent on behalf of the Company and that the Employee shall gain such special and unique knowledge and information from the Company and/or Affiliated Entities throughout the time of his/her employment. This knowledge and information are integral parts of the business of the Company and/or of the Affiliated Entities, and the use of this knowledge and information by a competitor of the Company would cause irreparable harm to the Company. The Company and Employee agree that this knowledge and information constitute legitimate protectable business interests of the Company and/or of the Affiliated Entities. The Company and Employee further agree that the business Employee secures, develops or services for the Company or for an Affiliated Entity shall constitute the exclusive property of the Company or Affiliated Entity as applicable. In view of the foregoing, Employee agrees that, for the duration of Employee's employment, and in the event Employee's employment is terminated for any reason, for a period of two (2) years after the termination of employment:

    a.   <u>Non-Solicitation/Non-Interference</u>. Employee will not directly or indirectly, for himself/herself or for any other person, corporation, firm or entity, either as a principal, shareholder, member, agent, manager, employee, contractor, owner, partner, director, officer or in any other capacity, engage in any of the following activities, without regard to geographic location:

        i.   Contacting or engaging in any communication with any Company or Affiliated Entity customer for whom Employee had responsibility, or contacting or engaging in any communications with any Company or Affiliated Entity customer or prospective Company or Affiliated Entity customer about whom Employee obtained knowledge during employment with the Company, to secure business competitive to the products and services provided by the Company or Affiliated Entity;

        ii.   Requesting, advising, or encouraging any customer of the Company or of an Affiliated Entity to terminate or curtail its relationship with the Company or Affiliated Entity, or requesting or advising any person to refrain from becoming a customer or supplier of the Company or an Affiliated Entity;

        iii.   Requesting, advising, or encouraging any employee, agent, representative or independent contractor of the Company or an Affiliated Entity to terminate his, her, or its relationship with the Company or Affiliated Entity, or requesting or advising any person

3

to refrain from becoming an employee, agent, representative or independent contractor of the Company or of an Affiliated Entity, or otherwise pursuing, employing or retaining (as an employee, an independent contractor or otherwise) any employee, agent, representative or independent contractor of the Company or of an Affiliated Entity without the written permission of the Company.

11.    Reasonableness of Restrictions, Injunctive Relief and Tolling.  Employee acknowledges that the restrictions contained in Paragraph 10 are reasonable and necessary for the reasonable protection of the Company's business and interests, and that any violation of these restrictions will cause substantial and irreparable injury to the Company, and as a consequence thereof, Employee agrees that the Company is entitled, in addition to any other remedies, to preliminary and permanent injunctive relief to secure specific performance and to prevent a breach or contemplated breach of this Agreement.  If it is judicially determined that Employee has violated any obligations of Paragraph 10, the period applicable to each obligation Employee has been determined to have violated will be extended by a period of time equal in length to the period during which such violation(s) occurred.  The Company reserves all remedies available at law or in equity.

12.    Severability.  In the event any provisions of this Agreement shall be held to be invalid or unenforceable, the same shall not affect the validity or enforceability of any other provisions thereof, and in the event that such claim of invalidity or unenforceability of any provision shall be predicated upon the length of the term of any covenant therein or the area covered thereby or the type of activity restrained, such provision shall not be deemed invalid or unenforceable but shall be deemed modified to the maximum area and the maximum term of duration and the type of activity as any court of competent jurisdiction shall deem reasonable, valid and enforceable.

13.    Purchase of Business.  The Company and Employee agree that there are many different ways to violate Paragraph 10 due to the variety of covenants contained in this Agreement, each of which could cause irreparable harm to the Company or the Affiliated Entities.  The parties specifically agree that any contact Employee makes to the Company's or the Affiliated Entity's customers will cause injury to the Company even if the contact does not immediately or directly result in Employee writing business for a Company or Affiliated Entity customer.  The parties therefore agree that there is no adequate remedy at law if Employee violates Paragraph 10.  However, in the event that Employee actually writes business for any Company of Affiliated Entity customer after Employee leaves the Company in violation of the covenants in Paragraph 10, whether or not the Company has obtained or has attempted to obtain equitable relief, the Company, at its election, may deem that Employee has elected to purchase from the Company or Affiliated Entity the business with respect to such customer, and upon written demand, Employee shall pay to the Company or Affiliated Entity an amount equal to two (2) times the customer's first year's sales commission payable with respect to any business customer purchases in connection with the business services Employee renders.  The parties intend this provision to be a reasonable estimation of damages which the Company or an Affiliated Entity may invoke only if Employee actually writes business for a Company Affiliated Entity customer.  All remedies contained in this Agreement are cumulative and may be exercised

4

(ACRWALLSTREET/P/2NSCE/ND)

singularly or concurrently, and the exercise of any one shall not be deemed a waiver of any other.

14.     Breach by Employee; Remedies.  Employee shall conduct him/herself at all times according to the terms and conditions of this Agreement and the Employee Handbook.  Failure to do so may render Employee liable for any loss or damage the Company may suffer on account of such failure.   Employee agrees that the Company may specifically enforce Employee's performance or recover damages for a breach of this Agreement by civil suit, injunction or otherwise, and Employee shall be liable to the Company for the reasonable costs and attorneys' fees of any such action in which a breach is established. The parties agree that any action at law or equity or any judicial proceedings for enforcement of this Agreement or any provision thereof shall be instituted only in the federal or state courts located in the County of Kent, State of Michigan.

15.     Acknowledgment.  Employee acknowledges that execution of this Agreement is required by the Company as a condition of becoming or remaining an employee, as the case may be, and that this Agreement supersedes any and all prior employment agreements between Employee and the Company (including any agreement between Employee and the Company's predecessor company), whether verbal or written, expressed or implied.

16.     Benefit.  This Agreement shall be binding upon and operate for the benefit of the parties and their respective heirs, representatives, successors, and assigns.

17.     Amendment and Termination.   The parties may amend or terminate this Agreement in a writing signed by both parties.  This Agreement will automatically terminate upon the Company's dissolution, bankruptcy, or insolvency, or Employee's death.

18.     State Law.  The laws of the State of Michigan shall govern this Agreement, excluding choice of law principles.

19.     Survival.  The parties' obligations under Paragraphs 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 20 shall survive the termination of Employee's employment and/or this Agreement.

20.     Entire Agreement.  This Agreement represents the entire Agreement between the parties regarding the terms and conditions of Employee's employment.   The terms of this Agreement may not be varied, modified, supplemented or in any other way changed by extraneous verbal or written representations by the Company or its agents.  This Agreement may not be modified except by a written agreement signed by all parties that expressly references and purports to modify this Agreement.

*[Signatures appear on the following page]*

5

IN WITNESS WHEREOF, the parties have executed this Agreement effective on the Effective Date identified above.

**EMPLOYEE:**

_____
(Signature)

_____
Printed name

Ty D. Mayberry

**THE COMPANY:**

**ACRISURE          WALLSTREET
PARTNERS, LLC**

By: _____

Its: _____

8603821_2.doc

6

# EXHIBIT 2



Leroy Wilbers - Managing Principle Acrisure Wallstreet Group

Ty Mayberry – Director of Worksite Benefits

Wallstreet Group / Acrisure

March 7, 2019

### Employment Agreement

This agreement is between the party of Leroy Wilber - Managing Principal of Acrisure Wallstreet Group and the party of Ty Mayberry – Worksite Benefits Director of Acrisure Wallstreet Group which acknowledges that both parties agree to the listed terms of employment following the 3 year earn out period ending March 1, 2020. All current employment agreements for 2019 between these parties shall stay in place until February 29, 2020.

Due to the extensive work and growth of the Worksite Division over the previous two years as well as the commitment from Mr. Mayberry to run all new override commissions that he is currently receiving directly to Acrisure Wallstreet Group;  Effective March 1,2020 Ty Mayberry will receive for his role as Director of Worksite a W2 Salary in the amount of $150,000 annually to be paid on the 15th of each month through Acrisure Wallstreet Group payroll as well as an override of 13 percentage points on all Worksite carrier production including but not limited to Aflac, Sun Life, Voya, Colonial, and Trans America. In addition, Ty Mayberry will also receive 15% of all Worksite Carrier Production bonuses awarded to Acrisure Wallstreet Group including but not limited to Aflac, Sun Life, Voya, Colonial, and Trans America.

Both signing parties Leroy Wilbers, managing principle representative of Acrisure Wallstreet Group and Ty Mayberry Worksite Benefits Director of Acrisure Wallstreet Group agree to the terms in this Employment Agreement. This agreement is a contract of employment between Acrisure Wallstreet Group and Ty Mayberry effective March 1, 2020 and has been agreed upon to stay in force through March 1, 2025. Contract may be terminated if and only if both parties Acrisure Wallstreet Group and Ty Mayberry both agree to terminate contract mutually.

Leroy Wilbers

Managing Principle

Acrisure Wallstreet Group

Ty Mayberry

Director of Worksite Benefits

Acrisure Wallstreet Group

**HOWARD LAW GROUP**
25 IONIA AVE. SW
SUITE 230
GRAND RAPIDS, MI 49503

FIRST-CLASS

PITNEY BOWES

US POSTAGE

02 7H
0001307769     MAR 09 2021
MAILED FROM ZIP CODE 49503

Acrisure, LLC
c/o Resident Agent CSC-Lawyers Incorporating Service
601 Abbot Road
Lansing, MI 48823





**KSB / ALL**
**Transmittal Number: 22939973**
**Date Processed: 03/22/2021**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Trish Partin<br>Acrisure, LLC<br>100 Ottawa Ave SW<br>Grand Rapids, MI 49503-5087 |
| **Electronic copy provided to:** | Tabatha Greer<br>Lisa Lawton<br>Jamie Fortney<br>Marcy Hoholik |

| | |
|---|---|
| **Entity:** | Acrisure Wallstreet Partners, LLC<br>Entity ID Number  3661555 |
| **Entity Served:** | Acrisure Wallstreet Partners, LLC d/b/a Wallstreet Group and/or Acrisure<br>Wallstreet Group |
| **Title of Action:** | Ty Mayberry vs. Acrisure Wallstreet Partners, LLC dba Wallstreet Group and/or<br>Acrisure Wallstreet Group and Acrisure, LLC |
| **Document(s) Type:** | Appearance |
| **Nature of Action:** | Labor / Employment |
| **Court/Agency:** | 17th Circuit Court, MI |
| **Case/Reference No:** | 21-00837-CK |
| **Jurisdiction Served:** | Michigan |
| **Date Served on CSC:** | 03/19/2021 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Regular Mail |
| Sender Information: | William D. Howard<br>616-235-6000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



25 Ionia Avenue S.W., Suite 230
Grand Rapids, Michigan 49503

*Telephone:* 616.235.6000
*Facsimile:* 616.235.6061

bhoward@howardlawgr.com

**William D. Howard**

March 9, 2021

Clerk of the Court
17th Circuit Court
180 Ottawa Ave. NW
Grand Rapids, MI 49503

   Re: ***Ty Mayberry v Acrisure Wallstreet Partners, LLC, et al***
      ***Case No.: 21-00837-CK***

Dear Clerk:

  Enclosed please find an Appearance for filing with the court in regards to the above referenced matter. Thank you.

  If you have any questions or concerns, please do not hesitate to contact me.

       Very truly yours,

       **HOWARD LAW GROUP**

       William D. Howard

WDH/rlw
Enclosure
cc w/encl: Unrepresented Parties c/o Resident Agent

Approved, SCAO

Original - Court
Additional copies to all attorneys of record
and unrepresented parties
JIS CODE: ATT

| STATE OF MICHIGAN | APPEARANCE | CASE NO. |
|---|---|---|
| 17th JUDICIAL DISTRICT JUDICIAL CIRCUIT COUNTY PROBATE | | 21-00837-CK<br>Hon. Curt A. Benson |

| Court address | Court telephone no. |
|---|---|
| 180 Ottawa Ave. NW, Grand Rapids, MI 49503 | 616-632-5220 |

| Plaintiff(s)/Petitioner(s)<br><br>Ty Mayberry | v | Defendant(s)/Respondent(s)<br><br>Acrisure Wallstreet Partners, LLC dba Wallstreet Group and/or Acrisure Wallstreet Group and Acrisure, LLC |
|---|---|---|

☐ Probate   In the matter of _____

☐ Juvenile   In the matter of _____

TO:   Clerk of the court/Register, all attorneys of record, and unrepresented parties:   Specify names and addresses.

Clerk of the Court, 17th Circuit Court, 180 Ottawa Ave. NW, Grand Rapids, MI 49503

Acrisure Wallstreet Partners, LLC dba Wallstreet Group and/or Acrisure Wallstreet Group c/o CSC-Lawyers Incorporating Service, 601 Abbot Road, Lansing, MI 48823

Acrisure, LLC c/o CSC-Lawyers Incorporating Service, 601 Abbot Road, Lansing, MI 48823

I appear on behalf of   Plaintiff Ty Mayberry _____ as

☑ attorney   ☐ guardian ad litem   and request copies of all papers filed in this case.

☐ Court appointed   ☐ Retained by _____

I certify that I represent no other interest whatsoever of any party to this cause, except as follows:

| 3/10/21 | [Signature] |
|---|---|
| Date | Signature |
| William D. Howard                        P36886 | 25 Ionia Ave. SW, Suite 230 |
| Name (type or print)                     Bar no. | Address |
| Howard Law Group | Grand Rapids, MI 49503                    616-235-6000 |
| Firm name | City, state, zip                          Telephone no. |

**MC 02** (3/08) **APPEARANCE**                                    MCR 2.117, MCR 3.915(C), MCR 3.916(B)



**25 Ionia Avenue SW, Suite 230**
**Grand Rapids, Michigan 49503**



GRAND RAPIDS MI 493

15 MAR 2021PM 5

FIRST-CLASS

02 7H          $ 000.51⁰
0001307769        MAR 12 2021
MAILED FROM ZIP CODE 49503

Acrisure Wallstreet Partners, LLC
d/b/a Wallstreet Group and/or Acrisure Wallstreet Group
c/o Resident Agent CSC-Lawyers Incorporating Service
601 Abbot Road
Lansing, MI 48823

48823-336601



**KSB / ALL**
**Transmittal Number: 22940044**
**Date Processed: 03/22/2021**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Trish Partin<br>Acrisure, LLC<br>100 Ottawa Ave SW<br>Grand Rapids, MI 49503-5087 |
| **Electronic copy provided to:** | Marcy Hoholik<br>Tabatha Greer<br>Lisa Lawton<br>Jamie Fortney |

| | |
|---|---|
| **Entity:** | Acrisure, LLC<br>Entity ID Number  3226126 |
| **Entity Served:** | Acrisure, LLC |
| **Title of Action:** | Ty Mayberry vs. Acrisure Wallstreet Partners, LLC dba Wallstreet Group |
| **Document(s) Type:** | Appearance |
| **Nature of Action:** | Labor / Employment |
| **Court/Agency:** | 17th Circuit Court, MI |
| **Case/Reference No:** | 21-00837-CK |
| **Jurisdiction Served:** | Michigan |
| **Date Served on CSC:** | 03/19/2021 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Regular Mail |
| Sender Information: | William D. Howard<br>616-235-6000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



25 Ionia Avenue S.W., Suite 230
Grand Rapids, Michigan 49503

*Telephone:* 616.235.6000
*Facsimile:* 616.235.6061

bhoward@howardlawgr.com

**William D. Howard**

March 9, 2021

Clerk of the Court
17th Circuit Court
180 Ottawa Ave. NW
Grand Rapids, MI 49503

      Re:    ***Ty Mayberry v Acrisure Wallstreet Partners, LLC, et al***
              ***Case No.: 21-00837-CK***

Dear Clerk:

    Enclosed please find an Appearance for filing with the court in regards to the above referenced matter. Thank you.

    If you have any questions or concerns, please do not hesitate to contact me.

              Very truly yours,

              **HOWARD LAW GROUP**

              William D. Howard

WDH/rlw
Enclosure
cc w/encl: Unrepresented Parties c/o Resident Agent

Approved, SCAO

Original - Court
Additional copies to all attorneys of record
and unrepresented parties
JIS CODE: ATT

| STATE OF MICHIGAN | | APPEARANCE | CASE NO. |
|---|---|---|---|
| 17th | JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | | 21-00837-CK<br><br>Hon. Curt A. Benson |

| Court address | Court telephone no. |
|---|---|
| 180 Ottawa Ave. NW, Grand Rapids, MI 49503 | 616-632-5220 |

| Plaintiff(s)/Petitioner(s) | | Defendant(s)/Respondent(s) |
|---|---|---|
| Ty Mayberry | v | Acrisure Wallstreet Partners, LLC dba Wallstreet Group and/or Acrisure Wallstreet Group and Acrisure, LLC |

☐ Probate    In the matter of _____

☐ Juvenile    In the matter of _____

TO:    Clerk of the court/Register, all attorneys of record, and unrepresented parties:    Specify names and addresses.

Clerk of the Court, 17th Circuit Court, 180 Ottawa Ave. NW, Grand Rapids, MI 49503

Acrisure Wallstreet Partners, LLC dba Wallstreet Group and/or Acrisure Wallstreet Group c/o CSC-Lawyers Incorporating Service, 601 Abbot Road, Lansing, MI 48823

Acrisure, LLC c/o CSC-Lawyers Incorporating Service, 601 Abbot Road, Lansing, MI 48823

I appear on behalf of    Plaintiff Ty Mayberry _____ as

☑ attorney    ☐ guardian ad litem    and request copies of all papers filed in this case.

☐ Court appointed    ☐ Retained by _____

I certify that I represent no other interest whatsoever of any party to this cause, except as follows:


| 3/10/21 | |
|---|---|
| Date | Signature |
| William D. Howard                    P36886 | 25 Ionia Ave. SW, Suite 230 |
| Name (type or print)                    Bar no. | Address |
| Howard Law Group | Grand Rapids, MI 49503                    616-235-6000 |
| Firm name | City, state, zip                    Telephone no. |

MC 02  (3/08)  **APPEARANCE**                                        MCR 2.117, MCR 3.915(C), MCR 3.916(B)



**25 Ionia Avenue SW, Suite 230**
**Grand Rapids, Michigan 49503**



GRAND RAPIDS MI 493

15 MAR 2021PM

FIRST-CLASS

02 7H
0001307769    MAR 12 2021
MAILED FROM ZIP CODE 49503

$ 000.51⁰

Acrisure, LLC
c/o Resident Agent CSC-Lawyers Incorporating Service
601 Abbot Road
Lansing, MI 48823